# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
May 30, 2024
Lyle W. Cayce
Clerk

No. 22-60462

Bety Virgen Tadeo,

*Petitioner,*

versus

Merrick Garland, *U.S. Attorney General,*

*Respondent.*

_____

Petition for Review of an Order of the
Board of Immigration Appeals
Agency No. A207 717 372

_____

Before King, Willett, and Douglas, *Circuit Judges.*

Per Curiam:[*]

Bety Virgen Tadeo petitions for review of an order of the Board of Immigration Appeals denying her application for deferral of removal under the Convention Against Torture. After review, we DENY Respondent's motion to dismiss for lack for jurisdiction, DENY Respondent's motion for summary disposition, and DENY Tadeo's petition for review.

**I.**

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-60462

Tadeo is a native of Mexico who first entered the United States without inspection in December 1999. In February 2020, Tadeo was convicted of distribution of methamphetamine under 21 U.S.C. § 841(a)(1) and conspiracy to distribute controlled substances under 21 U.S.C. §§ 841(a)(1) and 846. The district court sentenced Tadeo to thirty-six months imprisonment on each count to be served concurrently.

On August 18, 2021, the Department of Homeland Security ("DHS") issued Tadeo a Final Administrative Removal Order ("FARO") pursuant to 8 U.S.C. § 1228(b), finding Tadeo removable under 8 U.S.C. § 1227(a)(2)(A)(iii). However, after an asylum officer determined that Tadeo had a reasonable fear of persecution if removed to Mexico, DHS referred her to an Immigration Judge ("IJ") for withholding-only proceedings.[1] Tadeo submitted an application for withholding of removal and protection under the Convention Against Torture ("CAT") to the IJ on December 10, 2021.

On February 10, 2022, the IJ held a hearing on the merits of Tadeo's application. During the hearing, Tadeo expressed fear that she would be harmed by the Jalisco New Generation Cartel (the "Cartel") if removed to Mexico. Tadeo explained that because of her brother's involvement in organized crime, her father and other brother were murdered by the Cartel, and that the Cartel has also made threats to kill the rest of her family. Tadeo further alleged that the Cartel is involved with the local police, who will notify the Cartel if Tadeo returns to Mexico.

---

[1] "If an asylum officer determines that an alien . . . has a reasonable fear of persecution or torture, the officer shall so inform the alien and issue a Form I–863, Notice of Referral to the Immigration Judge, for full consideration of the request for withholding of removal only." 8 C.F.R. § 208.31(e).

No. 22-60462

The IJ denied Tadeo's application in full. As a preliminary matter, the IJ granted DHS's motion to pretermit Tadeo's application for withholding of removal. The IJ explained that because Tadeo had been convicted of an aggravated felony that constituted a "particularly serious crime," she was statutorily ineligible for withholding of removal under both CAT and the Immigration and Nationality Act ("INA"), and was eligible only for deferral of removal under CAT. The IJ then denied Tadeo's application for deferral under CAT based on the finding that she had failed to show that it was more likely than not that she would be tortured by the Cartel if removed to Mexico, and that she had further failed to show that the Mexican government would be involved in her torture.

Tadeo appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), arguing that: (1) Tadeo had established eligibility for deferral of removal under CAT; (2) the IJ failed to develop the record and advise Tadeo of her rights; and (3) the IJ failed to consider and give appropriate weight to evidence in the record.[2] On July 21, 2022, the BIA reviewed the IJ's decision, affirmed the IJ's denial of deferral of removal under CAT, and dismissed Tadeo's appeal. Tadeo petitioned this court for review on August 19, 2022.

**II.**

---

[2] On appeal to the BIA, Tadeo did not challenge the IJ's decision to pretermit her application for withholding of removal based on the finding that her prior aggravated felony convictions were "particularly serious crimes" that made her ineligible for such relief. *See* 8 C.F.R. § 208.16(d)(2) (mandatory withholding of removal denial under CAT); 8 U.S.C. § 1231(b)(3)(B)(ii) (mandatory withholding of removal denial under INA). As such, the sole issue before the BIA was whether Tadeo was eligible for deferral of removal under CAT. *See* 8 C.F.R. § 208.17(a) (deferral of removal eligibility under CAT). The same is true of Tadeo's appeal to this court.

"[J]urisdiction is always first." *Arulnanthy v. Garland*, 17 F.4th 586, 592 (5th Cir. 2021) (internal quotation omitted). Under the INA, we may consider a petition for review of a "final order of removal," so long as the petition was filed "not later than 30 days after the date of the final order of removal." 8 U.S.C. §§ 1252(a)(1), (b)(1). Additionally, "the 30-day filling deadline is not jurisdictional." *Argueta-Hernandez v. Garland*, 87 F.4th 698, 705 (5th Cir. 2023) (citing *Santos-Zacaria v. Garland*, 598 U.S. 411, 421–22 (2023)).

Historically, we have held that orders of removal, such as reinstatement orders, do not become "final" until the completion of withholding-of-removal and protection proceedings.[3] *See, e.g.*, *Ponce-Osorio v. Johnson*, 824 F.3d 502, 505–06 (5th Cir. 2016). However, recent Supreme Court decisions called our prior holdings into question. In *Nasrallah v. Barr*, 590 U.S. 573, 582 (2020), the Court clarified that orders denying CAT relief are not final orders of removal. CAT relief does not "disturb" a final order of removal, because a noncitizen granted CAT relief may still be removed to a country where he or she is not likely to face torture. *Id.* The Court reaffirmed *Nasrallah*'s reasoning in *Johnson v. Guzman Chavez*, 594 U.S. 523, 536 (2021), explaining that a final order of removal remains "in full force" when an IJ grants an application for withholding of removal.

This court settled this jurisdictional question in *Argueta-Hernandez v. Garland*, 87 F.4th at 705–06. In *Argueta-Hernandez*, a noncitizen petitioned for review of the BIA's order denying him withholding of removal and CAT relief. *Id.* at 705. The court addressed "whether the BIA's order [was]

---

[3] Like reinstatement orders, FAROs are considered "order[s] of removal" under 8 U.S.C. § 1252 that are reviewable on appeal once final. *See Valdiviez-Hernandez v. Holder*, 739 F.3d 184, 186–88 (5th Cir. 2013); *Osorio Diaz v. Barr*, 831 F. App'x 718, 718–19 (5th Cir. 2020).

deemed final for purposes of judicial review." *Id.* The court answered that it was, and it exercised jurisdiction to review the merits of the noncitizen's petition. *Id.* at 706. The court distinguished *Nasrallah* and *Johnson*, noting that *Nasrallah* "did not address jurisdiction or reinstatement proceedings, and it declined to consider arguments regarding its impact on statutory withholding orders," and that *Johnson* "concerned the finality of removal orders for purposes of detention under [8 U.S.C.] § 1231, not for judicial review under [8 U.S.C.] § 1252." *Id.* Thus, the court held that "[n]either *Nasrallah* nor *Johnson* overrule[d] this court's precedent" and reaffirmed *Ponce-Osorio*'s holding that orders of removal "are deemed 'final' under [8 U.S.C.] § 1252(b)(1) 'only upon completion of reasonable-fear and withholding-of-removal proceedings[.]'"[4] *Id.* at 705–06 (quoting *Ponce-Osorio*, 824 F.3d at 505–07).

Applying *Argueta-Hernandez*, Tadeo's FARO became final when the BIA dismissed Tadeo's appeal seeking protection under CAT, and Tadeo filed a petition for review within thirty days after the BIA's decision. Accordingly, this court has jurisdiction to reach the merits of Tadeo's timely petition for review regarding deferral of removal under CAT.

### III.

In an appeal of a BIA decision, we review the BIA's legal conclusions—including its conclusions related to constitutional due process claims—*de novo*, and we review its factual findings for substantial evidence. *Arulnanthy*, 17 F.4th at 592; *Santos-Alvarado v. Barr*, 967 F.3d 428, 439 (5th

---

[4] Although *Argueta-Hernandez* concerned a reinstatement order, rather than, like here, a FARO, the case's reasoning applies fully to FAROs because the same protection and withholding-of-removal proceedings that may follow entry of a reinstatement order may also follow the entry of a FARO. *See Bartolome v. Sessions*, 904 F.3d 803, 808 & n.1 (9th Cir. 2018). *Compare* 8 C.F.R. § 208.31(e), *with* 8 C.F.R. § 241.8(e).

Cir. 2020). Under the substantial evidence standard, we will reverse "only if the evidence is so compelling that no reasonable fact finder could fail to find the petitioner statutorily eligible for relief." *Qorane v. Barr*, 919 F.3d 904, 909 (5th Cir. 2019) (internal quotation omitted). Merely "drawing two inconsistent conclusions from the evidence" is not enough. *Revencu v. Sessions*, 895 F.3d 396, 401 (5th Cir. 2018) (quoting *Arif v. Mukasey*, 509 F.3d 677, 679 (5th Cir. 2007)). Rather, the noncitizen must show "that the evidence is so compelling that no reasonable factfinder could reach a contrary conclusion." *Sanchez-Amador v. Garland*, 30 F.4th 529, 533 (5th Cir. 2022) (quoting *Chen v. Gonzales*, 470 F.3d 1131, 1134 (5th Cir. 2006)). During our review, we may also consider the underlying decision of the IJ when, "as here, it influenced the BIA's decision." *Mirza v. Garland*, 996 F.3d 747, 752 (5th Cir. 2021) (internal quotation omitted).

\* \* \*

On appeal, Tadeo's claimed errors with the BIA's conclusions fall within two categories: (1) constitutional due process; and (2) merits. We discuss each in turn.

### A. Due Process

It is well established that noncitizens are entitled to due process of law during removal proceedings under the Fifth Amendment of the Constitution. *Anwar v. INS*, 116 F.3d 140, 144 (5th Cir. 1997). As such, "the IJ must conduct deportation hearings in accord with due process standards of fundamental fairness." *Animashaun v. INS*, 990 F.2d 234, 238 (5th Cir. 1993). "As a general rule, due process requires that an alien be provided notice of the charges against him, a hearing before an executive or administrative tribunal, and a fair opportunity to be heard." *Okpala v. Whitaker*, 908 F.3d 965, 971 (5th Cir. 2018). For a hearing to be deemed constitutionally infirm, "the defect complained of must have been such as

might have led to a denial of justice, or there must have been absent one of the elements deemed essential to due process." *Animashaun*, 990 F.2d at 238.

Additionally, to prevail on a due process claim, a noncitizen "must make an initial showing of substantial prejudice." *Okpala*, 908 F.3d at 971. That is, the noncitizen must "make a prima facie showing that the alleged violation affected the outcome of the proceedings." *Id.*

Tadeo first contends that the BIA erred by holding that the IJ sufficiently developed the factual record. She argues that "in light of [her] particular circumstances, *i.e.*, limited formal education, memory problems, custody status, and lack of legal representation," the IJ "failed to perform her function of interrogating, examining, and cross examining the applicant," rendering the hearing fundamentally unfair. According to Tadeo, "[h]ad the factfinder posed targeted questions, designed to elicit legally relevant details, . . . Tadeo would have met her burden for relief."

Tadeo is correct that when a noncitizen appears *pro se*, the IJ should "facilitate the development of testimony." *Arteaga-Ramirez v. Barr*, 954 F.3d 812, 813 (5th Cir. 2020) (quoting *Lopez-Rodriguez v. INS*, No. 93-5242, 1994 WL 122108, at *6 (5th Cir. 1994)). Crucially, however, an IJ "does not have a duty to act as an advocate" for a noncitizen, even if that noncitizen is proceeding *pro se*. *Id.* at 813 (citing *Solis Romero v. Barr*, 769 F. App'x 126, 127 (5th Cir. 2019)). Here, the IJ informed Tadeo of her right to be represented, provided Tadeo with copies of documents that Tadeo stated she could not remember receiving, advised Tadeo that she could apply for withholding-of-removal protection given her fear of returning to Mexico, explained to Tadeo that there is a difference between withholding of removal and deferral of removal before ruling on her claims, and questioned Tadeo about the merits of her claim. Although Tadeo points out that the "IJ asked

approximately thirty questions during the merits hearing," and that "[b]y comparison the asylum officer asked approximately ninety [merit-based] questions" during Tadeo's reasonable fear inquiry, she also concedes that "[t]he IJ in this case did not entirely fail to question the applicant." Moreover, the IJ entered the reasonable fear inquiry assessment into evidence, and Tadeo does not argue that the IJ failed to consider any of her answers contained therein upon submission of her case.

Tadeo also ascribes error to the BIA's conclusion that the IJ's failure to call three potential witnesses on her behalf did not constitute a due process violation. At the hearing, Tadeo explained that she "had three people that [she] wanted to come, but they all said no because of the Covid." Thus, Tadeo offered to provide the IJ with their names and phone numbers "in case [the IJ] want[ed] to call them on the phone." It is undisputed that those witnesses were never called. Tadeo contends that this failure denied her a meaningful opportunity to be heard, and that the IJ failed to uphold its duty to manage the hearing.

However, after Tadeo offered these three witnesses, the IJ specifically explained that the decision to have them questioned was "entirely up to [Tadeo]." Tadeo did not reiterate her request. Moreover, as the BIA correctly notes, at the end of the hearing—including after a ten-minute recess—the IJ twice asked Tadeo if there was "anything else that [she] would like to tell [the IJ]." And, in response to this inquiry, Tadeo even attempted to submit an extra piece of evidence with the court, indicating that Tadeo understood the IJ's offer to take any additional matters into consideration. Tadeo's failure *to take advantage* of the opportunity to call these three additional witnesses does not equate to a *denial* of a fair opportunity to be heard. And, once again, the IJ had no affirmative duty to act as Tadeo's advocate. *Arteaga-Ramirez*, 954 F.3d at 813.

Next, Tadeo contends that her due process rights were violated because the IJ and BIA erroneously relied on a mistranslated death certificate by mischaracterizing the factual record, and that the faulty translation influenced the outcome of the proceedings.[5] Tadeo is correct that the IJ and BIA appear to have erred in their analysis of the death certificate due to a misunderstanding of a mistranslation. On September 24, 2020, a legal medical expert concluded that Tadeo's brother died as a result of a "craniocephal [sic] injury caused by projectile fired by firearm," and sent a letter to the Oaxaca Agency of the Ministry requesting that Tadeo's brother's death certificate reflect this fact. The death certificate—which was written in Spanish—was issued the next day, September 25, 2020, and indeed reflected this fact. However, in the record, there is a translated copy of the Mexican death certificate that lists the causes of death as "A) acute myocardial infarction, B) systemic arterial hypertension 2 years, C) diabetes mellitus type-II 5 years." The IJ and the BIA erroneously concluded that the translated copy was, indeed, the original copy, and that the letter sent by the medical expert was a *request to modify* the original document. This conclusion is contradicted by the record—the medical examiner's letter was sent *before* either of the two death certificates on the record were created. Thus, it appears that the original Spanish death certificate did, in fact, note the cause of death as a gunshot wound to the head—as concluded by the medical expert—and that the English copy was incorrectly translated.[6]

---

[5] This court has generally treated the existence of an uncorrected mistranslation of evidence in the record as a potential due process issue. *See, e.g.*, *Wang v. Holder*, 569 F.3d 531, 539 n.6 (5th Cir. 2009); *Minh Ngoc Nguyen v. Holder*, 482 F. App'x 932, 933 (5th Cir. 2012); *Hayat v. Holder*, 391 F. App'x 382, 383–84 (5th Cir. 2010).

[6] Neither party offers any explanation as to how or why this mistranslation occurred, and we decline to speculate about the answer here.

Regardless, this conclusion does not warrant granting Tadeo's petition. As noted above, Tadeo must make a "prima facie showing that the alleged violation affected the outcome of the proceedings." *Okpala*, 908 F.3d at 971. As discussed further *infra*, the IJ and the BIA rested much of their decisions to deny relief on the fact that Tadeo failed to prove state action. Even crediting that the original death certificate corroborated that her brother died from a gunshot wound to the head, that fact would only support Tadeo's subjective fear of torture *by the Cartel*. It would not lend any support to the idea that the *Mexican government* would be complicit in any torture. Thus, even assuming the IJ and BIA erred in this regard, Tadeo has failed to demonstrate that she was substantially prejudiced by this error.[7]

Finally, Tadeo argues that the IJ improperly failed to consider country conditions report evidence that was—according to Tadeo—"not properly received and considered by the IJ due to a technical oversight by the detention center staff member who uploaded the documents." Tadeo points out that her submission to the court contained a table of contents listing various country conditions reports, and that "it is reasonable to assume that the listed country conditions were also part of the filling and were not scanned." But, an equal and opposite inference is also valid—that the documents were not submitted due to Tadeo's own failure to submit the evidence. Without reaching any conclusion as to what actually occurred, we simply find that the BIA correctly surmised that Tadeo "has not persuasively established that she actually submitted this evidence," especially considering the fact that she never tried to submit any of that purportedly unscanned evidence to the BIA on appeal. Thus, we cannot fault

---

[7] Moreover, it is undisputed that the IJ and the BIA found Tadeo to be a credible witness, and that the IJ specifically found—based on Tadeo's testimony and evidence—that "the respondent has a subjective fear of returning to Mexico."

the IJ for failing to consider what it never received, and we cannot fault the BIA for holding the same. *See Lin v. Holder*, 478 F. App'x 219, 227 (5th Cir. 2012) ("Ultimately, [Petitioner] failed to properly submit evidence corroborating his claim that he will face future persecution if returned to China. [Petitioner] had ample opportunity to properly admit the notice, but did nothing. Therefore, the BIA was not required to consider the documents that were not in evidence.").

In sum, Tadeo has not convincingly shown a violation of her due process rights. The record indicates that the IJ assisted Tadeo throughout the proceedings, questioned Tadeo to fill in gaps, and considered all evidence available before it. And, to the extent that the IJ did err, Tadeo has not shown that those errors would have affected the outcome of her proceeding. Thus, we agree with the BIA's determination.

## B. Merits

To be granted deferral under CAT, a noncitizen must show that "it is more likely than not that he or she would be tortured" in the country to which he or she is subject to removal. 8 C.F.R. § 208.16(c)(2), 208.17(a). Specifically, under our precedent, a noncitizen bears the burden to prove that "(1) it [is] more likely than not that he will be tortured upon return to his homeland; and (2) sufficient state action [will be] involved in that torture." *Tabora Gutierrez v. Garland*, 12 F.4th 496, 502–03 (5th Cir. 2021) (internal quotation and alteration omitted); *see also Aviles-Tavera v. Garland*, 22 F.4th 478, 486 (5th Cir. 2022).

We cannot say that "no reasonable factfinder could reach a contrary conclusion" to that reached by the BIA. *See Sanchez-Amador*, 30 F.4th at 533 (internal quotation omitted). Here, Tadeo argued that the Mexican government acquiesced in the alleged murders of her father and brother by the Cartel, and that if she returns, she will also be killed by the Cartel with

No. 22-60462

the Mexican government's acquiescence. However, when the IJ asked *how* Tadeo knows that the Mexican government was involved, and *why* she believes the state police will inform the cartel of her arrival, she simply stated "[b]ecause everybody says that. And because everybody tells my mother and sister what happened." These subjective fears, without more, are insufficient to show that it is *more likely than not* that she will be subjected to torture through state action upon return. *See Sanchez-Amador*, 30 F.4th at 534. And, even though the IJ found Tadeo's testimony credible, a mere finding of credibility is not necessarily sufficient to carry Tadeo's burden. *See Garland v. Ming Dai*, 593 U.S. 357, 372–73 (2021). The BIA correctly upheld the IJ's conclusions.

## IV.

For the foregoing reasons, Respondent's motion to dismiss for lack for jurisdiction is DENIED, Respondent's motion for summary disposition is DENIED, and Tadeo's petition for review is DENIED.